US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

FEB 04 2011

CHRIS R. JOHNSON, Clerk
By
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

WASHINGTON REGIONAL OUTREACH SERVICES                    PLAINTIFF

vs.                         CASE NO. 11-5030

MPT OF FAYETTEVILLE, LLC,
a Delaware Limited Liability Company                     DEFENDANT

## COMPLAINT

Comes Washington Regional Outreach Services ("Washington") and for its Complaint against the Defendant, MPT of Fayetteville, LLC, a Delaware limited liability company ("MPT"), states as follows:

### PARTIES SUBJECT MATTER, and JURISDICTION

1.      Washington is an Arkansas Nonprofit Corporation organized under the Arkansas Domestic Nonprofit Corporation Act of 1993, with its principal place of business at 3215 North Hills Boulevard, Fayetteville, Arkansas 72703. At all times pertinent to the cause of action alleged herein, Washington was a citizen and resident of Washington County, state of Arkansas.

2.      MPT is a foreign limited liability company organized under the laws of the state of Delaware. The principal place of business of MPT is 100 Urban Center Drive, Suite 501, Birmingham, Alabama 35242. Service of process on MPT may be accomplished by serving the registered agent for MPT, National Registered Agents, Inc. of Arkansas, 455 West Maurice Street, Hot Springs, Arkansas 71901. At all times

15543:00008

pertinent to the cause of action alleged herein, MPT was a resident and citizen of either the state of Delaware or the state of Alabama.

3. The subject matter of this litigation is an option to purchase real property between the predecessor of MPT and Washington. The amount in controversy is in excess of the sum of $75,000, exclusive of costs and interest. This Court has original jurisdiction pursuant to 28 U.S.C. 1332 by reason of diversity of citizenship and amount in controversy herein. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391 (a) (2) in that a substantial part of the events giving rise to this claim occurred in the Western District of Arkansas, Fayetteville Division, and the real property that is the subject of this action is located in the Western District of Arkansas, Fayetteville Division.

## FACTS

4. On March 28, 1990, a Lease and Security Agreement was entered into by Fayetteville Health Associates Limited, a Delaware limited partnership, and Northwest Arkansas Rehabilitation Associates, an Arkansas general partnership. MPT is the successor in interest of Fayetteville Health Associates Limited Partnership. The Lease and Security Agreement provided that Fayetteville Health Associates Limited Partnership as landlord leased property located in Washington County, Arkansas described as a HealthSouth rehabilitation facility located at 153 East Monte Painter Drive in Fayetteville, Arkansas ("the property"). A copy of the Lease and Security Agreement with Amendments 1 through 5 thereto ("the Lease") is attached hereto as Exhibit A to this Complaint.

5. The Lease provides an option for Washington to purchase the property. Specifically, in paragraph 25.4, the Lease states as follows:

> 25.4 Tenant's Option to Purchase the Property. Provided no event of default has occurred and is continuing, Tenant shall have the option exercisable on not less than six months' nor more than 18 months' notice to purchase the Property upon the expiration of any Term at the greater of Fair Market Value Purchase price of the Property as of the expiration of said Term or the Minimum Repurchase Price. The foregoing option to purchase is also hereby granted to and may be exercised during the foregoing twelve month period by Washington or CMS Fayetteville; provided, however, that if both Washington and one or more of CMS Fayetteville and Tenant attempt to exercise the foregoing option, such option shall vest solely in Washington and neither Tenant nor CMS Fayetteville will have any right of option to purchase the property pursuant to Section 25.4; provided, further that if both Tenant and CMS Fayetteville (but not Washington) attempt to exercise the foregoing option, such option shall vest solely in Tenant and CMS Fayetteville shall have no right or option to purchase the Property pursuant to this Section 25.4.

Exhibit A, ¶ 25.4.

6. According to its terms, the Lease was for an original term of ten years. Section 3.2 of the Lease further provides there is an option to extend the Lease for three additional five year renewal terms. The options shall be exercised by Tenant by delivery of a notice to that effect to Landlord not less than 180 days but not more than 360 days prior to the date upon which the Lease would otherwise terminate. According to its terms, the current five year renewal of the Lease expires on June 30, 2011.

7. The Lease contains provisions for appraising the property to determine the "fair market value purchase price" of the property. In particular, the Lease states in paragraph 25.1 as follows:

> 25.1 Appraisers. If at the time it becomes necessary to determine the fair market value, fair market value purchase price, or fair market rental of the property for any purpose under this Lease, and the parties are unable to agree thereon, the party required or permitted to give Notice of such required determination shall include in the Notice the name of a person selected to act as appraiser on its behalf. Within ten days after such notice, Landlord or Tenant, as the case may be, shall by Notice to Tenant or Landlord, as the case may be, either agree to the appointment of the appraiser identified in such initial Notice, in which case the appraiser shall be the sole appraiser for purposes of determining Fair Market Value, Fair Market Value Purchase Price, or Fair Market Rental, as the case may be, or shall appoint a second person as appraiser on its behalf. Any appraiser appointed pursuant to this Section must be a member of the American Institute of Real Estate Appraisers (or any successor organization thereto). The appraiser(s) thus appointed shall within 45 days after the date of the Notice appointing the first appraiser proceed to appraise the Property to determine the Fair Market Value, Fair Market Value Purchase Price, or Fair Market Rental thereof (as the case may be) as of the relevant date (giving effect to the impact, if any, of inflation from the date of their decision to the relevant date). In the case of two appraisers, and except as provided in paragraph 25.2, the appraisal shall be averaged to determine the Fair Market Value, Fair Market Value Purchase Price, or Fair Market Rental, as the case may be. In any event, the appraised value determined in accordance with this section shall be final and binding on Landlord and Tenant.

Exhibit A, ¶ 25.2.

8. The Lease further provides that appraisals shall be conducted in a manner consistent with "sound appraisal practice." Lease, ¶ 25.2. The Lease also provides, in pertinent part:

> Notwithstanding the provisions of Section 25.1, if the difference between the appraisal amounts determined by the appraisers appointed pursuant to Section 25.1 exceeds ten percent of the lesser of such appraisal amounts, then the two appraisers shall have 20 days to appoint a third appraiser. If no appraiser is appointed within 20 such days or within 90 days of the original request for a determination of Fair Market Value, Fair Market Value Purchase Price, or Fair Market Rental (as the case may be), whichever is earlier, either Landlord or Tenant may apply to any court having jurisdiction to have such appointment made by such court.

Exhibit A, ¶ 25.2

9. On December 3, 2010, Washington gave notice to MPT of its intent to exercise its option to purchase the property pursuant to the Lease. Washington notified MPT that it was exercising its option to purchase the property upon expiration of the term of the Lease at the greater of the fair market value purchase price or minimum purchase price as shall be determined in accordance with the Lease and that it had engaged Ernest W. Wolfe, MIA and Steven Cosby, MIA to perform appraisal services identified in the Lease and Security Agreement. A copy of the notice is attached hereto and identified as Exhibit B.

10. On December 13, 2010, MPT responded to Washington's letter of December 3, 2010 indicating that it had appointed Neal Salzgeber, MIA, of Salus Evaluation Group for the purpose of presenting his opinion as to the fair market value purchase price pursuant to Article 25.1 of the Lease. Said letter further indicates that the dollar amount of the fair market value purchase price would be submitted no later than January 17, 2011 which is 45 days from the date of the notice given by Washington of the appointment of its appraiser and its intent to exercise the Lease. A copy of the letter of MPT is attached hereto and identified as Exhibit C.

11. On or about January 14, 2011, Washington notified MPT their appraisal had been performed by CBRE on the property and the fair market value purchase price was $9,400,000. A copy of said correspondence is attached hereto and identified as Exhibit D. Pursuant to a request from MPT, a copy of said appraisal was furnished to MPT on January 17, 2011. A copy of the CBRE appraisal and addendum is attached hereto and identified as Exhibit E. At the time the appraisal was forwarded to MPT,

counsel for Washington reminded MPT of its obligation to furnish Mr. Salzgeber's opinion as to the fair market value purchase price no later than January 17, 2011 in accordance with the Lease. A copy of that correspondence is attached hereto and identified as Exhibit F.

12. Despite the fact that the terms of the Lease required the fair market value purchase price opinion of MPT to be furnished to Washington on or before January 17, 2011 and MPT's agreement to furnish said information to Washington no later than January 17, 2011, MPT by letter dated January 18, 2011 advised that it would be furnishing Mr. Salzgeber's appraisal report to Washington or before January 22, 2011. A copy of the correspondence of MPT is attached hereto and identified as Exhibit G.

13. On January 21, 2011, MPT furnished the opinion of its appraiser, Neal Salzgeber, that the fair market value purchase price was $19,500,000. A copy of the Salus appraisal is attached hereto and identified as Exhibit H. MPT further represented that the appraisal of Mr. Salzgeber was consistent with the requirements of the Lease and indicated that the appraisal prepared for Washington was not prepared in accordance with the requirements of the Lease. A copy of the correspondence of MPT of January 21, 2011 is attached hereto and identified as Exhibit I.

14. On January 26, 2011, Washington advised MPT that it was exercising its option to purchase according to the Lease and that the purchase price was $9,400,000. A copy of the correspondence of Washington to MPT of January 26, 2011 is attached hereto and identified as Exhibit J.

15. On January 31, 2011, Washington received correspondence from MPT dated January 27, 2011 advising that Washington did not have the option to purchase the property for any sum less than $19,500,000, the amount of the Salus appraisal performed for MPT. MPT refuses to convey the property for the sum of $9,400,000 in accordance with the Lease. MPT's letter of January 27, 2011 is attached hereto and made a part hereof and is identified as Exhibit K.

## CAUSE OF ACTION: BREACH OF CONTRACT

16. Washington restates and incorporates herein by reference the preceding paragraphs as if repeated here word for word.

17. Paragraph 25.4 of the Lease, specifically grants Washington the option to purchase the property. The option is exercisable not less than six months or more than 18 months prior to the expiration of any term of the Lease. Notice of exercise of the purchase price within the appropriate time frame was given to MPT on December 3, 2010. According to paragraph 25.4 of the Lease, the option to purchase rests solely in Washington if it elects to proceed on the option to purchase.

18. Washington gave notice in accordance with paragraph 25.4 and further provided the information regarding its appraisers required in paragraph 25.1 to MPT. MPT acknowledged receipt of said information, designated its appraiser, and failed to provide an appraisal conducted "in a manner consistent with sound appraisal practice" pursuant to paragraph 25.2 of the Lease. MPT also failed to provide its appraisal information in accordance with paragraph 25.1 which requires the appraiser within 45 days after the date of notice appointing the first appraiser to appraise the property to

determine the fair market purchase value. That date was January 17, 2011 and the information from the appraiser for MPT was not provided until January 22, 2011. The opinion of MPT's appraiser as to the fair market value purchase price was in excess of 200 percent over and above the appraisal provided by the appraiser for Washington.

19. MPT has failed and refused to perform its agreement pursuant to the Lease. In accordance with the Lease, Washington has the right to exercise its option to purchase for the sum of $9,400,000. All conditions precedent for exercising its option to purchase have occurred. The failure of MPT to timely furnish its appraisal results and to furnish an appraisal "conducted in a manner consistent with sound appraisal practice" entitles Washington to exercise its option for the sum of the fair market value purchase price as determined by its appraiser, $9,400,000. MPT has breached the terms of the Lease.

20. The terms of the Lease require that MPT furnish through its appraiser its fair market value purchase price on or before January 17, 2011. MPT, when it received Washington's notice of exercising its option and its appointment of an appraiser, acknowledged that MPT's appraisal of the information regarding the fair market value purchase price was due no later than January 17, 2011. MPT failed to furnish its appraiser's opinion of the fair market value purchase price on or before January 17, 2011 and waited until after it received the appraisal of Washington before providing its appraiser's opinion of the fair market value purchase price on or about January 22, 2011. Further, the appraisal of Neal Salzgeber on behalf of MPT was not conducted in a manner consistent with sound appraisal practice as is required by the Lease.

21. The language in the Lease is clear and unequivocal and MPT understood by virtue of its correspondence with Washington on December 13, 2010 that it was required to produce its appraiser's opinion of the fair market value purchase price on or before January 17, 2011. The language in the Lease clearly requires that any appraisal "shall be conducted in a manner consistent with sound appraisal practice." The appraisal provided by MPT on January 22, 2011 is not consistent with sound appraisal practices; it overvalues the land and the facilities on the subject property without regard to appropriate comparable properties, local conditions in Fayetteville, Arkansas, and is specifically not performed pursuant to the Uniform Standards of Professional Appraisal Practice ("USPAP") and the requirements of the Code of Professional Ethics and Standards of the Professional Appraisal Practice of the Appraisal Institute, all as required by the Lease.

22. On January 31, 2011, Washington received correspondence from MPT dated January 27, 2011 advising that Washington did not have the option to purchase the property for a fair market value purchase price equivalent to the average of the appraisal performed by CBRE for Washington and the appraisal performed for MPT by Salus, and the purchase price would be $19,500,000 in accordance with the Salus appraisal. As the Salus appraisal was not prepared in accordance with the requirements of the Lease nor timely submitted, Washington should be entitled to purchase said property for the sum of $9,400,000, the amount of the CBRE appraisal.

23. Because MPT has failed to perform its obligations pursuant to the Lease, it should be ordered to specifically perform said obligations which include but are not

limited to conveyance of the subject matter real property to Washington for the sum of $9,400,000. In the alternative, MPT should pay to Washington a sum of money that will reasonably and fairly compensate it for MPT's breach of the contract between the parties.

24.    Washington, pursuant to the terms of the Lease, specifically paragraph 28.16, is entitled to recover its attorney's fees incurred herein along with costs and expenses of prosecution of this action because it has been required to commence an action against MPT to interpret or enforce the terms of the Lease and because of the breach by MPT of the terms of said Lease.

WHEREFORE, Plaintiff, Washington Regional Outreach Services, prays for an Order requiring MPT of Fayetteville, LLC to specifically perform the contract between the parties and to specifically perform the terms of the Lease and Security Agreement between the parties including, but not limited to, ordering that MPT of Fayetteville, LLC convey the property in question for the sum of $9,400,000 to Washington Regional Outreach Services, or in alternative award damages to Washington Regional Outreach Services for breach of contract, and for attorney's fees and costs incurred herein, and for all other proper relief.

　　　　　　　　　　　　　　　　　WASHINGTON REGIONAL OUTREACH
　　　　　　　　　　　　　　　　　SERVICES, PLAINTIFF

　　　　　　　　　　　　　　　　　By its Attorneys,

　　　　　　　　　　　　　　　　　THOMAS J. OLMSTEAD, Ark. Bar. No. 95175
　　　　　　　　　　　　　　　　　3215 N. Hills Blvd
　　　　　　　　　　　　　　　　　Fayetteville, AR 72703
　　　　　　　　　　　　　　　　　Tel (479) 463-5018

Fax (479) 463-7924

G. ALAN WOOTEN, Ark. Bar No. 71083
ROBERT A. FRAZIER, Ark. Bar No. 2004125
WARNER, SMITH & HARRIS, PLC
3333 Pinnacle Hills Parkway Suite 220
Rogers, AR 72758
479-271-6041
479-271-6065 (fax)

By: _____

Attorneys for Plaintiff