U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED
AUG 17 2011
CHRIS R. JOHNSON, CLERK
BY
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| WASHINGTON REGIONAL OUTREACH SERVICES | PLAINTIFF |
| VS.    CASE NO. 2011-5030 | |
| MPT OF FAYETTEVILLE, LLC, a Delaware Limited Liability Company | DEFENDANT |
| MPT OF FAYETTEVILLE, LLC, a Delaware Limited Liability Company | COUNTER-PLAINTIFF/ THIRD-PARTY PLAINTIFF |
| VS. | |
| WASHINGTON REGIONAL OUTREACH SERVICES | COUNTER-DEFENDANT |
| AND | |
| NORTHWEST ARKANSAS REHABILITATION ASSOCIATES, a general partnership; AND CMS FAYETTEVILLE REHABILITATION, INC. | DEFENDANTS |

### COUNTER-CLAIM AND THIRD-PARTY COMPLAINT

Comes now separate Defendant MPT of Fayetteville, LLC ("MPT"), by and through its attorneys, Kutak Rock LLP, and for its Counter-Claim against Washington Regional Outreach Services ("Washington Regional") and Third-Party Complaint against Northwest Arkansas Rehabilitation Associates ("NARA") and CMS Fayetteville Rehabilitation, Inc. ("CMS Fayetteville"), states as follows:

### INTRODUCTION

1. MPT brings this Counter-Claim and Third-Party Complaint seeking relief for breach of contract as well as declaratory relief from this Court under 28 U.S.C. § 2201 relating to the interpretation of that certain Lease and Security Agreement dated March 28, 1990, made

4841-5030-9642.1

between MPT's predecessors in interest, Fayetteville Health Associates Limited Partnership, and NARA, and the validity of certain actions taken by Washington Regional pursuant to its terms. A true and correct copy of the Lease as amended by that First Amendment to Lease dated June 28, 1991, that Second Amendment to Lease dated December 15, 1991, that Third Amendment to Lease and Security Agreement dated December 31, 1994, and that Fourth Amendment to Lease dated June 22, 2001, and that Fifth Amendment to Operating Lease and Security Agreement dated December 1, 2009 (collectively the "Lease") is attached hereto as Exhibit "1" and incorporated by reference.

2. The Lease covers use of a hospital facility located at 153 East Monte Painter Drive, Fayetteville, Washington County, Arkansas (the "Property"), and pursuant to Paragraph 28.9 of the Lease it is governed by and construed in accordance with the laws of the state of Arkansas.

3. MPT is a Delaware limited liability company with its principal place of business in Birmingham, Alabama.

4. Washington Regional, a general partner of NARA, is an Arkansas non-profit corporation with its principal place of business in Fayetteville, Arkansas.

5. CMS Fayetteville, a general partner of NARA, is an Arkansas corporation with its principal place of business in Mechanicsburg, Pennsylvania.

6. NARA is an Arkansas general partnership with its principal place of business in Mechanicsburg, Pennsylvania.

7. Jurisdiction and venue are proper in this Court.

## STATEMENT OF FACTS

8. On March 28, 1990, Fayetteville Health Associates Limited Partnership, as Landlord, and NARA, as Tenant, entered into a Lease and Security Agreement for use of a hospital facility located at 153 East Monte Painter Drive, Fayetteville, Washington County, Arkansas.

9. MPT obtained title to the property in 2008 and further obtained its interest as landlord on the Lease pursuant to that certain Assignment of Leases between MPT and MPT's predecessor-in-interest, HCP, Inc., dated July 14, 2008.

10. Pursuant to the Fourth Amendment to Lease, the Lease expired on June 30, 2011. See Ex. 1.

11. Paragraph 25.4 of the Lease provides for the Tenants, NARA, CMS Fayetteville, and Washington Regional's option to Purchase the Property upon expiration of the Lease:

> Provided no Event of Default has occurred and is continuing, Tenant shall have the option exercisable on not less than six months nor more than 18 months Notice to purchase the Property upon the expiration of any Term at the greater of Fair Market Value Purchase Price of the Property as of expiration of said Term or the Minimum Purchase Price. The foregoing option to purchase is also hereby granted to, and may be exercised during the foregoing 12 month period by, Washington or CMS Fayetteville; provided, however, that if both Washington and one or more of CMS Fayetteville and Tenant attempt to exercise the foregoing option, such option shall vest solely in Washington and neither Tenant nor CMS Fayetteville will have any right of option to purchase the Property pursuant to this Section 25.4…

12. Article I of the Lease defines fair market value purchase price ("Fair Market Value Purchase Price") as the fair market value of the Property less the fair market added value ("Fair Market Added Value"). Fair market value is defined as follows:

> "Fair Market Value" shall mean, with respect to the Property, including all Capital Additions, the price that a willing buyer not compelled to buy would pay to a willing seller not compelled to sell for such property (a) assuming this lease is not in effect with respect to the Property (b) assuming that such seller must pay any closing costs and title insurance premiums with respect to such sale and (c) assuming that the Property is fully licensed by all governmental agencies

having jurisdiction thereof, and is and will continue to be operated for the Primary Intended Use and is otherwise a going concern. Notwithstanding the foregoing, the computation of Fair Market Value shall assume that this Lease is in effect with respect to the Property in the event that the Tenant elects to acquire the Property pursuant to Section 15.2(b). For purposes of this Lease, Fair Market Value shall be determined in accordance with the appraisal procedures set forth in Article XXV or in such other manner as shall be mutually agreed upon by Landlord and Tenant. ("Fair Market Value")

13. Article I of the Lease defines minimum purchase price as follows:

"Minimum Repurchase Price" shall mean the Initial Improvement Costs, plus any portion of a Capital Addition Cost which Landlord has actually paid, less the net amount (after deduction of all reasonable legal fees and other costs and expenses, including without limitation expert witness fees, incurred by Landlord in connection with obtaining any such proceeds or awards) of any proceeds of insurance paid to and retained by the Landlord in accordance with Article XV of this Lease and of any Awards received by Landlord and not applied to restoration of the Property in accordance with Article XVI of this Lease. ("Minimum Purchase Price")

14. Paragraph 25.1 of the Lease provides a process for selecting appraisers to determine Fair Market Value Purchase Price:

If at any time it becomes necessary to determine the Fair Market Value, Fair Market Value Purchase Price or Fair Market Rental of the Property for any purpose under this Lease, and the parties are unable to agree thereupon, the party required or permitted to give Notice of such required determination shall include in the Notice the name of a person selected to act as appraiser on its behalf. Within ten days after such Notice, landlord or Tenant, as the case may be, shall by notice to Tenant or Landlord, as the case may be, either agree to the appointment of the appraiser identified in such initial Notice, in which case the appraiser shall be the sole appraiser for purposes of determining the Fair Market Value, Fair Market Value Purchase Price, or Fair Market Rental, as the case may be, or shall appoint a second person as an appraiser on its behalf. Any appraiser appointed pursuant to this Section must be a member of the American Institute of Real Estate Appraisers (or any successor organization thereto). The appraiser(s) thus appointed shall, within 45 days after the date of Notice appointing the first appraiser, proceed to appraise the Property to determine the Fair Market Value, Fair Market Value Purchase Price or Fair Market Rental thereof (as the case may be) as of the relevant date (giving effect to the impact, if any, of inflation from the date of their decision to the relevant date). In the case of two appraisers, except as provided in Section 25.2, the two appraisals shall be averaged to determine the Fair Market Value, Fair Market Value Purchase Price or Fair Market Rental, as the case may be. In any event, the appraised value determined in accordance with this Section shall be final and binding on Landlord and Tenant.

4841-5030-9642.1

15. Paragraph 25.2 of the Lease provides a process for the method of appraisal for determining Fair Market Value Purchase Price:

> Any appraisal required or permitted by the terms of this Lease shall be conducted in a manner consistent with sound appraisal practice. Notwithstanding the provisions of Section 25.1, if the difference between the appraisal amounts determined by the appraisers appointed pursuant to Section 25.1 exceeds ten percent of the lesser of such appraisal amounts, then the two appraisers shall have 20 days to appoint a third appraiser. If no such appraiser is appointed within such 20 days or within 90 days of the original request for a determination of Fair Market Value, Fair Market Value Purchase Price or Fair Market Rental (as the case may be), whichever is earlier, either Landlord or Tenant may apply to any court having jurisdiction to have such appointment made by such court. Any appraiser appointed by the original appraisers or by such court shall be instructed to determine the Fair Market Value, Fair Market Value Purchase Price or Fair Market Rental (as the case may be) within 45 days after appointment of such appraiser. The determination of the three appraisers which differs most in the terms of dollar amount from the determinations of the other two appraisers shall be excluded, and 50% of the sum of the remaining two determinations shall be final and binding upon Landlord and Tenant as the Fair Market Value, Fair Market Value Purchase Price or Fair Market Rental (as the case may be)…

16. Paragraph 28.8 of the Lease provides the methods through which the Parties may give notices:

> All notices, demands, requests, consents, approvals and other communications ("Notice" or "Notices") hereunder shall be in writing and delivered by personal delivery, courier or messenger service, express or overnight mail, or by registered or certified mail, return receipt requested and postage prepaid … .

17. Paragraph 28.8 of the Lease further defines the effective date of Notice for purposes of calculating time frames for any response required or permitted under the Lease:

> Personally delivered Notices sent by courier or messenger service or by express or overnight mail shall be effective upon receipt, and Notices given by mail shall be complete at the time of deposit in the U.S. mail system, but any prescribed period of Notice and any right or duty to do any act or make any response within any prescribed period or on a date certain after the service of such Notice given by mail shall be extended five (5) days.

18. Paragraph 28.16 of the Lease allows for the collection of attorneys' fees, costs, and expenses incurred in connection with any action involving the interpretation or enforcement of the terms of the Lease.

19. By letter dated December 3, 2010, Washington Regional notified MPT by certified mail of its election to purchase the Property upon the expiration of the Lease and designated Ernest W. Wolf, MAI, and Stephen Cosby, MAI, principles of the valuation and advisory firm of CB Richard Ellis, to perform any appraisal services on its behalf as needed pursuant to the Lease. See Ex. 2.

20. Washington Regional never attempted to negotiate with or agree upon the Fair Market Value Purchase Price with MPT prior to initiating the appraisal process. In fact, Washington Regional never contacted MPT regarding the Fair Market Value Purchase Price prior to submitting its designation of an appraiser on December 3, 2010.

21. On December 13, 2010, MPT notified Washington Regional by certified mail of its designation of Neil Salzgeber, MAI, of Salus Valuation Group, to perform appraisal services on its behalf as required by the Lease. See Ex. 3.

22. By letter dated December 13, 2010, NARA notified MPT of its election to exercise its option to purchase the Property upon the expiration of the Lease. See Ex. 4. Such election has never been withdrawn by NARA and is still pending.

23. By letter dated December 30, 2010, CMS Fayetteville notified MPT of its election to exercise its option to purchase the Property upon the expiration of the Lease. See Ex. 5. Such election has never been withdrawn by CMS Fayetteville and is still pending.

24. By letter dated January 14, 2011, sent via Federal Express, Washington Regional notified MPT of Mr. Wolf and Mr. Cosby's appraisal which estimated the Fair Market Value Purchase Price at Nine Million Four Hundred Thousand Dollars ($9,400,000). See Ex. 6.

6

25. On January 17, 2011, Washington Regional delivered by e-mail and Federal Express a copy of Mr. Wolf and Mr. Cosby's appraisal to MPT. See Ex. 7.

26. On January 21, 2011, MPT delivered by e-mail and Federal Express a copy of Mr. Salzgeber's appraisal which estimated the Fair Market Value Purchase Price at Nineteen Million Five Hundred Thousand Dollars ($19,500,000), and further notified Washington Regional, NARA, and CMS Fayetteville of its position that the appraisal prepared by Mr. Wolf and Mr. Cosby was not prepared in accordance with the requirements of the Lease. See Ex. 8.

27. Pursuant to Paragraph 25.2 of the Lease, the appraisers for both parties had 20 days, until February, 10, 2011, to agree to a third appraiser to complete the appraisal process contained in the Lease.

28. On January 26, 2011, Washington Regional notified MPT of its position that the appraisal furnished by MPT was untimely, that it was not conducted in a manner consistent with sound appraisal practices, and that pursuant to the Lease, the Fair Market Value Purchase Price was now set at $9,400,000. See Ex. 9.

29. On January 27, 2011, MPT notified Washington Regional, NARA, and CMS Fayetteville of its position that the appraisal prepared by Mr. Wolf and Mr. Cosby was not prepared in accordance with the requirement of the Lease. See Ex. 10.

30. On February 1, 2011, MPT notified Washington Regional, NARA, and CMS Fayetteville by e-mail and Federal Express that Washington Regional's December 3, 2010, Notice was not delivered in accordance with the terms of the Lease, which required as a condition precedent that the parties not be able to agree to a Fair Market Value Purchase Price prior to resorting to the appraisal process. See Ex. 11.

4841-5030-9642.1

31. On February 1, 2011, Mr. Salzgeber notified Mr. Wolf and Mr. Cosby by Federal Express of his recommendation for John W. VanSanten, MAI, to serve as the third party appraiser as required by Paragraph 25.2 of the Lease. See Ex. 12.

32. On February 4, 2011, rather than proceed with the required appraisal process, Washington Regional filed suit with this Court alleging that the appraisal produced by Mr. Salzgeber was untimely and that it was not completed pursuant to the terms of the Lease. In its Complaint, Washington Regional asks this Court to strike Mr. Salzgeber's appraisal and unilaterally, without contractual support, force the sale of the Property at the amount shown by Mr. Wolf and Mr. Crosby's appraisal.

33. On February 10, 2011, counsel for Washington Regional notified Mr. Salzgeber that Washington Regional had filed suit against MPT and that it had instructed Washington Regional that it was not necessary to proceed with attempting to appoint a third appraiser and to abide by the terms of the Lease. See Ex. 13.

34. On February 11, 2011, counsel for MPT notified counsel for Washington Regional that the failure to proceed with the appraisal process constituted a further breach of the Lease. See Ex. 14.

## COUNT I - As to Washington Regional

35. MPT hereby re-alleges and readopts all allegations contained in Paragraphs 1 through 34 as if set forth word for word herein.

36. On December 3, 2010, Washington Regional sent notice to MPT of its decision to execute its option to purchase the Property upon expiration of the Lease and further designated an appraiser to perform any appraisal services on its behalf. See Ex. 2.

37. The Lease contemplates two separate notices. One, under Paragraph 25.4 to exercise the option to purchase the Property, and a second pursuant to Paragraph 25.1 to initiate the appraisal process if it becomes necessary.

38. Pursuant to Paragraph 25.1 of the Lease, the appraisal process becomes available when it is necessary to determine the Fair Market Value Purchase Price of the Property and, as a condition precedent, the parties are unable to agree thereupon. See Ex. 1.

39. In breach of Paragraph 25.1 of the Lease, Washington Regional never attempted to negotiate with or agree upon the Fair Market Value Purchase Price of the Property with MPT prior to initiating the appraisal process.

40. Up to and including the date on which Washington Regional breached the Lease, MPT had fulfilled all of its obligations under the Lease.

41. Accordingly, MPT respectfully requests that this Court determine that Washington Regional breached the Lease by never attempting to agree upon the Fair Market Value Purchase Price of the Property with MPT prior to initiating the appraisal process, and, as a result thereof, Washington Regional's notice of exercising its option to purchase is invalid and Washington Regional is not entitled to purchase the Property.

42. Pursuant to Paragraph 28.16 of the Lease, MPT is entitled to the collection of attorneys' fees, costs, and expenses incurred in connection with this action.

### COUNT II - As to Washington Regional

43. MPT hereby re-alleges and readopts all allegations contained in Paragraphs 1 through 42 as if set forth word for word herein.

44. Pursuant to Paragraph 25.2 of the Lease, any appraisal required or permitted by the terms of this Lease shall be conducted in a manner consistent with sound appraisal practice. See Ex. 1.

4841-5030-9642.1

45. Pursuant to Article I of the Lease, Fair Market Value shall mean the price that a willing buyer not compelled to buy would pay to a willing seller not compelled to sell for the Property assuming, among other factors, "that the Property is fully licensed by all governmental agencies having jurisdiction thereof, and is and will continue to be operated for the Primary Intended Use and is otherwise a going concern." Pursuant to Article I of the Lease, Primary Intended Use is defined as a "60 bed, 56,400 square foot freestanding comprehensive medical rehabilitation hospital fully licensed by the State."

46. In breach of Paragraph 25.2 of the Lease, Mr. Wolf and Mr. Cosby, on behalf of Washington Regional, failed to conduct their appraisal in a manner consistent with sound appraisal practice. Such inconsistencies include, but are not limited to, use of improper deductions, inappropriate comparables, inaccurate square footage calculations, and an application of a faulty market analysis.

47. In breach of Article I of the Lease, Mr. Wolf and Mr. Cosby, on behalf of Washington Regional, failed to conduct their appraisal assuming that the Property is fully licensed by all governmental agencies having jurisdiction thereof, will continue to be operated as a 60 bed, 56,400 square foot freestanding comprehensive medical rehabilitation hospital, and is otherwise a going concern.

48. Up to and including the date on which Washington Regional breached the Lease, MPT had fulfilled all of its obligations under the Lease.

49. Accordingly, MPT respectfully requests that this Court determine that Washington Regional breached the Lease by furnishing an appraisal that was not prepared in accordance with the requirements of the Lease, and, as a result thereof, Washington Regional is not entitled to purchase the Property.

50.     Pursuant to Paragraph 28.16 of the Lease, MPT is entitled to the collection of attorneys' fees, costs, and expenses incurred in connection with this action.

## COUNT III - As to Washington Regional

51.     MPT hereby re-alleges and readopts all allegations contained in Paragraphs 1 through 50 as if set forth word for word herein.

52.     In the alternative to Counts I and II, if Washington Regional's December 3, 2010, Notice to MPT of its decision to execute its option to purchase the Property upon expiration of the Lease and designation of appraiser was proper, and if the appraisal created by Mr. Wolf and Mr. Crosby is valid, Washington Regional's insistence that MPT's furnishing of its appraisal was untimely is improper.

53.     Washington Regional alleges that the appraisal furnished by MPT was untimely and that the purchase price under the Lease is set at Mr. Wolf and Mr. Cosby's appraisal of $9,400,000.

54.     Washington Regional improperly alleges that the Lease requires the opinions of each party's chosen appraiser be produced within 45 days of Washington Regional's designation of its own appraiser. Paragraph 25.1 of the Lease, however, requires only that "[t]he appraiser(s) thus appointed shall, within 45 days after the date of Notice appointing the first appraiser, proceed to appraise the Property to determine the Fair Market Value, Fair Market Value Purchase Price or Fair Market Rental thereof… ." There is no language in the Lease requiring the actual amounts or the appraisals themselves be disclosed within this 45 day window.

55.     The Lease itself contemplates the process for disclosure exceeding 45 days. Paragraph 25.2 of the Lease states "if the difference between the appraisal amounts determined by the appraisers appointed pursuant to Section 25.1 exceeds ten percent of the lesser of such appraisal amounts, then the two appraisers shall have 20 days to appoint a third appraiser. If no

11

such appraiser is appointed within such *20 days or within 90 days of the original request for a determination of Fair Market Value, Fair Market Value Purchase Price or Fair Market Rental (as the case may be), whichever is earlier*, either Landlord or Tenant may apply to any court having jurisdiction to have such appointment made by such court." (emphasis added). That the twenty day period for appointing a third appraiser could occur up to and after 90 days from the notice initiating the appraisal process shows that disclosure could occur after the 45 day window.

56. Washington Regional improperly contends that in the event MPT's appraisal was not delivered by January 17, 2011, the Lease sets the Fair Market Value Purchase Price at the amount established by Washington Regional's appraiser.

57. Washington Regional sent its December 3, 2010, Notice via certified mail. Pursuant to Paragraph 28.8 of the Lease, if Notice is made by certified mail, the time for any response to such notice is extended by 5 days thus requiring MPT to proceed to appraise the Property within 50 days of December 3, 2010, or January 22, 2011, rather than within 45 days of December 3, 2010 or January 17, 2010.

58. On January 21, 2011, MPT delivered by e-mail and Federal Express a copy of Mr. Salzgeber's appraisal estimating the Fair Market Value Purchase Price at $19,500,000.

59. MPT furnished its appraiser's opinions in accordance with the Lease.

60. Accordingly, MPT respectfully requests that this Court declare that the appraisal furnished by MPT on January 21, 2011, was provided in accordance with the Lease and that Washington Regional is not entitled to purchase the Property at the amount stated in its appraisal.

61. Without a declaration that the appraisal furnished by MPT was completed in accordance with the Lease, MPT cannot proceed with the sale, lease, or general use of the Property at the expiration of the Lease. Therefore, there exists a present, actual, and justiciable

4841-5030-9642.1

controversy, and this Court should enter a declaratory judgment determining the rights, duties, and obligations of the parties.

62. Pursuant to Paragraph 28.16 of the Lease, MPT is entitled to the collection of attorneys' fees, costs, and expenses incurred in connection with this action.

### COUNT IV – As to Washington Regional

63. MPT hereby re-alleges and readopts all allegations contained in Paragraphs 1 through 62 as if set forth word for word herein.

64. In the alternative to Counts I and II, if Washington Regional's December 3, 2010, Notice to MPT of its decision to execute its option to purchase the Property upon expiration of the Lease and designation of appraiser was proper, and if the appraisal created by Mr. Wolf and Mr. Crosby is valid, Washington Regional failed to act in good faith and breached the Lease by instructing its appraisers not to cooperate or work with MPT's appraiser to nominate a third appraiser pursuant to the terms of the Lease.

65. On January 17, 2011, Washington Regional furnished a copy of Mr. Wolf and Mr. Cosby's appraisal which estimated the Fair Market Value Purchase Price at Nine Million Four Hundred Thousand Dollars ($9,400,000). See Ex. 7.

66. On January 21, 2011, MPT delivered by e-mail and Federal Express a copy of Mr. Salzgeber's appraisal which estimated the Fair Market Value Purchase Price at Nineteen Million Five Hundred Thousand Dollars ($19,500,000). See Ex. 8.

67. Pursuant to Paragraph 25.2 of the Lease, if the difference between the appraisal amounts determined by the appraisers appointed pursuant to Section 25.1 exceeds ten percent of the lesser of such appraisal amounts, then the two appraisers shall have 20 days, or February 10, 2011, to appoint a third appraiser to complete the appraisal process contained in the Lease. If the appraisers selected by the parties fail to select a third appraiser within such 20 days or within 90

days of the original request for a Fair Market Value Purchase Price, whichever is earlier, a party may apply to any court having jurisdiction to have such appointment made by such court.

68. The difference between both appraisals is $10,100,000. Because this difference exceeds 10% of the appraisal submitted by Mr. Wolf and Mr. Cosby, the appraisers for both parties were required to cooperate in good faith to appoint a third appraiser by February 10, 2011.

69. On February 1, 2011, Mr. Salzgeber notified Mr. Wolf and Mr. Cosby by Federal Express of his recommendation for John W. VanSanten, MAI, to serve as the third party appraiser contemplated by Paragraph 25.2 of the Lease. See Ex. 12.

70. At Washington Regional's direction, Mr. Wolf and Mr. Cosby refused to discuss the appointment of a third appraiser with Mr. Salzgeber.

71. On February 10, 2011, counsel for Washington Regional notified Mr. Salzgeber that Washington Regional had filed suit against MPT and that it had instructed its client that it was not necessary to proceed with attempting to cooperate in good faith to appoint a third appraiser. See Ex. 13.

72. Accordingly, MPT respectfully requests that this Court determine that Washington Regional breached the Lease by instructing its appraisers not to cooperate in good faith with Mr. Salzgeber in selecting a third appraiser to complete the appraisal process contained in the Lease, and, as provided for in Paragraph 25.2 of the Lease, appoint Mr. VanSanten to serve as the third appraiser to complete the appraisal process.

73. Pursuant to Paragraph 28.16 of the Lease, MPT is entitled to the collection of attorneys' fees, costs, and expenses incurred in connection with this action.

4841-5030-9642.1

## COUNT V- As to NARA and CMS Fayetteville

74.     MPT hereby re-alleges and readopts all allegations contained in Paragraphs 1 through 73 as if set forth word for word herein.

75.     In the alternative to Counts I and II, if Washington Regional's December 3, 2010, Notice to MPT of its decision to execute its option to purchase the Property upon expiration of the Lease and designation of appraiser was proper, and if the appraisal created by Mr. Wolf and Mr. Crosby is valid, the notices received from NARA and CMS Fayetteville are ineffective due to Washington's Regional's exercise of its option to purchase the Property.

76.     On December 3, 2010, Washington Regional notified MPT of its election to purchase the Property upon the expiration of the Lease.  See Ex. 2.

77.     On December 13, 2010, NARA notified MPT of its election to exercise its option to purchase the Property upon the expiration of the Lease.  See Ex. 4.  Such election has never been withdrawn by NARA and is still pending.

78.     On December 30, 2010, CMS Fayetteville notified MPT of its election to exercise its option to purchase the Property upon the expiration of the Lease.  See Ex. 5.  Such election has never been withdrawn by CMS Fayetteville and is still pending.

79.     Pursuant to Paragraph 25.4 of the Lease, if both Washington Regional and one or more of CMS Fayetteville and NARA attempt to exercise the option to purchase the Property, the option vests solely in Washington Regional and neither CMS Fayetteville nor NARA have any right of option to purchase the Property.

80.     Accordingly, MPT respectfully requests that this Court determine the status of the notices received from CMS Fayetteville and NARA.

81.     Without a declaration regarding the statuses of the notices submitted by CMS Fayetteville and NARA, MPT cannot proceed with the sale, lease, or general use of the Property

at the expiration of the Lease. Therefore, there exists a present, actual, and justiciable controversy, and this Court should enter a declaratory judgment determining the rights, duties, and obligations of the parties.

82. Pursuant to Paragraph 28.16 of the Lease, MPT is entitled to the collection of attorneys' fees, costs, and expenses incurred in connection with this action.

WHEREFORE, the Defendant/Counter-Plaintiff/Third-Party Plaintiff, MPT of Fayetteville, LLC, respectfully requests a declaration by this Court as set forth in its Counter-Claim and Third-Party Complaint, for its costs and attorneys' fees incurred herein, and for all other necessary and proper relief to which it may be entitled.

Respectfully submitted,

**KUTAK ROCK LLP**

By: _____
Michael R. Bond, AR 2003114
Russell C. Atchley, AR 82007
234 East Millsap Road, Suite 400
Fayetteville, AR 72703-4099
(479) 973-4200 Telephone
(479) 973-0007 Facsimile
Michael.Bond@KutakRock.com
Russell.Atchley@KutakRock.com

**ATTORNEYS FOR MPT OF FAYETTEVILLE, LLC**

## CERTIFICATE OF SERVICE

I, Michael R. Bond, do hereby certify that a true and correct copy of the foregoing was placed in the United States mail, on this on this 17th day of August, 2011, addressed to:

G. Alan Wooten
Connor & Winters
4375 N. Vantage Drive
Fayetteville, AR 72703

Thomas J. Olmstead
3215 N. Hills Blvd
Fayetteville, AR 72703

Robert A. Frazier
Frazier & Frazier, Lawyers, PLC
114 S. 1st Street, Suite 202
Rogers, AR 72756

/s/ Michael R. Bond
Michael R. Bond

4841-5030-9642.1