IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| WASHINGTON REGIONAL OUTREACH SERVICES | PLAINTIFF |
| VS. CASE NO. 2011-5030 | |
| MPT OF FAYETTEVILLE, LLC, a Delaware Limited Liability Company | DEFENDANT |
| MPT OF FAYETTEVILLE, LLC, a Delaware Limited Liability Company | COUNTER-PLAINTIFF/ THIRD-PARTY PLAINTIFF |
| VS. | |
| WASHINGTON REGIONAL OUTREACH SERVICES | COUNTER-DEFENDANT |
| AND | |
| NORTHWEST ARKANSAS REHABILITATION ASSOCIATES, a general partnership; AND CMS FAYETTEVILLE REHABILITATION, INC. | DEFENDANTS |

**DEFENDANT MPT OF FAYETTEVILLE, LLC'S BRIEF IN SUPPORT OF MOTION TO RECONSIDER JANUARY 19, 2012 ORDER**

Comes now Defendant/Counter-Plaintiff/Third-Party Plaintiff, MPT of Fayetteville, LLC ("MPT"), by and through its attorneys, Kutak Rock LLP, and for its Brief in Support of Motion to Reconsider January 19, 2012 Order, states as follows:

**I. INTRODUCTION**

On January 19, 2012, a hearing was held on Washington Regional Outreach Services' ("Washington Regional") Motion to Suspend Collection of Holdover Rent or Direct Payment of Holdover Rent Into the Registry of the Court (document 15) and Northwest Arkansas Rehabilitation Associates' ("NARA") Motion to Suspend Collection of, Allow, or Order

4816-9816-4494.1

Payment of Hold Over Rent Into the Registry of the Court (document 27).  On January 18, 2012, the night before the hearing, Washington Regional filed a Motion for Leave to File Supplemental Complaint pleading for the first time its claim of entitlement to the rent at issue in the above referenced motions (document 33).  To support its claim, Washington Regional cited *Miller v. Estate of Dawson*, 14 Ark. App. 167, 686 S.W.2d 443 (1985) for the proposition that, "A court in equity, awarding specific performance should also charge the defaulting seller of land to account for and pay to the purchaser the rents and profits from the land to compensate the purchase for the delay in the seller's performance."  Document 33, p. 4.  MPT did not have the opportunity to address Washington Regional's supplemental complaint prior to the January 19, 2012 hearing and advised the Court of same at the hearing.

Upon completion of the hearing, the Court took the matters under advisement.  The Court subsequently entered its order granting in part and denying in part each motion (the "Order") (document 34).  The Order requires NARA, as tenant, to deposit all rent payments due under its lease agreement with MPT (the "Lease Agreement") with the registry of the Court.  On January 20, 2012, MPT filed a Motion for Clarification of the January 19, 2012 Order (document 36).  On January 26, 2012, the Court confirmed that all rents were ordered paid to the registry of the Court (document 41).  Due to the potential consequences of this order, MPT respectfully requests that the Court reconsider this decision prior to the rent payments due from NARA on February 1, 2012.

## II.  ARGUMENT

Whether to order funds submitted to the registry of the Court lies in the discretion of the trial judge and is not mandatory upon request by a party.  Fed. R. Civ. P. 67.  Here, the circumstances involved weigh against submission.  MPT exists for the sole purpose of owning

and operating the property subject to the Lease Agreement at issue in this dispute (the "Property"). See Ex. A, Hamner Affidavit, ¶ 3. The revenue generated from monthly rent payments on the Property represents MPT's sole source of cash flow and is required for MPT to comply both with its obligations to its tenant and with its other obligations associated with ownership of the Property. See Ex. A, Hamner Affidavit, ¶ 4. By ordering the rent payments submitted to the registry, the Court has withheld this cash flow, despite MPT's continued obligations as owner. Through no fault of MPT, the Court's Order has placed MPT in an unsustainable position.

## A. Equitable Compensation Prohibits Recovery of Total Rent Under the Lease Agreement

Washington Regional seeks relief through specific performance and the associated doctrine of equitable compensation. Specific performance is an equitable remedy that compels performance of a contract on the precise terms agreed upon by the parties. *See Elder Construction Co. v. Lane*, 2010 Ark. App. 10, 3-4, __ S.W.3d __. Whether specific performance should be awarded in a particular case is a question of fact for the circuit court. *Id*. Equity will not grant specific performance unless the party seeking relief shows that he has at all times been ready, willing, and able to perform in keeping with the agreement. *Id*. at 6. Washington Regional has not made a showing to the court that it has been ready, willing, and able to perform in keeping with the Lease Agreement. Instead, presuming its right to specific performance, Washington Regional has claimed right to all rent payments from NARA to MPT as equitable compensation. Washington Regional's position and its characterization of the *Dawson* opinion are incorrect and have bearing on this Motion for Reconsideration. Under *Dawson*,

> The general rule, where specific performance is granted of a contract to sell realty, is that the vendor must account to the purchaser for any deprivation of the

> use of the property from the date when possession should have been transferred, and for any detriment to the property caused by his failure to preserve it properly; as against which the vendor is entitled to credit for any expenses and carrying charges properly incurred by him for the improvement or preservation of the property, and for any loss of the use of the purchase money or other consideration from that same date.

Equitable compensation payments are intended to equalize losses between the parties occasioned by the delay in performing the contract. *Childs v. Adams*, 322 Ark. 424, 909 S.W.2d 641 (1995) (*citing Lovelace v. Diehl*, 236 Ark. 129, 364 S.W.2d 317 (1963). Similar to *Dawson*, the *Child*'s opinions give further guidance on the doctrine:

> The two charges are equitably offsetting and should go together. The sellers are charged with the rental value because they have had the use of the buyers' land, and the buyers are charged with interest because they have had the use of the sellers' money. . . . To make either charge without the other is evidently unwarranted, for it gives the favored party the use of both the land and the money.

*Id.* Compensation for deprivation of the use of land is determined by the fair rental value of the property. *See Stacy v. Lin*, 34 Ark. App. 97, 806 S.W.2d 15 (1991).

The full standard for equitable compensation raises two issues applicable to the Court's Order. First, Washington Regional has improperly alleged that it is entitled to the full rent payments from NARA based on the terms of the Lease Agreement. The rental payments to MPT by NARA are determined by a contract between NARA and MPT. There is nothing in the Lease Agreement implying that that it will govern a subsequent tenancy between Washington Regional and NARA. The rental payment contained in the Lease Agreement is the result of an arms length transaction between NARA and MPT and based on a land valuation vastly different than the alleged fair market value of the Property established by Washington Regional's appraiser. MPT believes the current range of rental rates for hospitals similar to the Property is generally between 8.0% and 11.0% of the real estate value, for an average of 9.5%; this belief is based on multiple recent transactions that MPT has participated in, including specifically a recent sale and

a separate recent lease to an affiliate of co-plaintiff NARA. See Ex. A, Hamner Affidavit, ¶ 11. By implying that WROS would be able to negotiate lease payments equal to the agreed monthly rent under the Lease Agreement also implies that the value of the real estate is more than double the $9.2 million asserted by Plaintiff. Plaintiff cannot have it both ways. See Ex. A, Hamner Affidavit, ¶ 12. If the value of the real estate is $9.2 million, Plaintiff would be unable to negotiate rent exceeding approximately $874,000 ($9.2 million divided by 9.5%); conversely, if Plaintiff has a legitimate claim for the total rent, the real estate is worth an amount more aptly represented by MPT's appraisal. See Ex. A, Hamner Affidavit, ¶ 13.

Equitable compensation is intended to place a party where it would have been. Here, like a temporary taking, the correct measure is the fair market rental value of the property, a number which according to Washington Regional's appraisal would be far less than the standard monthly rent paid by NARA to MPT. Further, regardless of what the Court determines regarding the standard monthly rent, under no circumstance can Washington Regional claim entitlement to the additional holdover rent. Article XX of the Lease Agreement provides that NARA must pay the additional holdover rent if it "*for any reason* remains in possession of the Property after expiration of the Term." The collection of this additional holdover rent is based on a contractual penalty rather than the rental value of the property collectable as part of equitable compensation. As Washington Regional has no right to the additional holdover rent and NARA has plead no claim for the additional holdover rent, the submission of the additional rent to the registry of the Court is improper.

Second, if the Court determines that Washington Regional is entitled to rent as a form of equitable compensation, it will not be for the full rental value of the Property. To give Washington Regional the full rental value would give it use of both the land and the money, to

the detriment of MPT.  Under the doctrine of equitable compensation, MPT is entitled to offset the rent with expenses incurred in maintaining the Property during the delay and for the interest on the purchase money retained by Washington Regional during this dispute.  Because Washington Regional cannot recover the full standard monthly rent or the additional holdover rent from MPT, it is improper to withhold the full amount of MPT during this lawsuit.

Both of these factors are relevant to Washington Regional's attempt to have the full rent submitted to the registry of the Court prospectively.  Aside from sequestering more of MPT's money than needed to satisfy their alleged claims, the retention of all of the full rent places MPT in a position where it cannot meet its obligations and continue as a going concern.  These unintended consequences are discussed further below.  Equitable compensation acts as an equitable accounting, which here is more properly performed and determined at the close of trial and not through Rule 67.  MPT strongly urges the Court to reconsider its Order as MPT maintains that it is not at fault in this dispute.

### B. Submission of Full Rent Payment into Registry Irreparably Harms MPT

As it stands, the Order causes irreparable harm to MPT and runs counter to the principles of Rule 67 and the doctrine of equitable compensation.  MPT, having done nothing wrong, would ask the Court note the following unintended consequences of its Order in considering this Motion for Reconsideration.[1]

---

[1] Washington Regional refused to comply with Section 25.2 of the Lease which provides the agreed upon mechanism for resolving a dispute when the appraisals vary greater than ten percent.  After it was apparent that Washington Regional and MPT's appraisals varied by greater than ten percent, MPT in accordance with Section 25.2 recommend John W. VanSanten be appointed as the third appraiser to determine the purchase price.  Washington Regional refused

As legal owner of the Property, MPT is responsible for satisfaction of significant current expenses including property taxes, property and casualty insurance, liability insurance, maintenance, upkeep, capital improvements, etc. See Ex. A, Hamner Affidavit, ¶ 5. The Lease Agreement provides for the payments to MPT and others to satisfy these expenses. See Ex. A, Hamner Affidavit, ¶ 6. Unless the terms of the Lease Agreement with respect to payment are followed, MPT has no other income source from which to pay these expenses and costs. See Ex. A, Hamner Affidavit, ¶ 7. Moreover, MPT associates with other separate entities in $780,000,000 in debt and credit facilities. See Ex. A, Hamner Affidavit, ¶ 8. MPT has guaranteed the payment of those debt and credit facilities. *Id*. The Court's ruling that all of the rent may belong to another party and the inability of MPT to collect and use rent each month may disqualify MPT as a guarantor of this debt. See Ex. A, Hamner Affidavit, ¶ 9. This disqualification will impact compliance with terms of the debt and at a minimum decrease the amount of such debt that may remain outstanding. *Id*.

MPT's business is to earn a return on its investments in real estate. The order imposes on MPT the obligation to maintain an investment in the Fayetteville hospital but gives the fair and bargained for return on that investment to another party without requiring ANY investment by that other party. Washington Regional has made a general and unfounded claim that it is entitled to these rent payments and now has the payments secured in the registry without having to follow the normal and more stringent procedure for attachment under Federal Rule of Civil Procedure 64. If Washington Regional is correct, though MPT strongly disputes their claim, the Court's Order gives Washington Regional the windfall of the financial benefits of ownership

---

to accept Mr. VanSanten as the third appraiser or nominate another appraiser and filed this lawsuit.

without the obligations of ownership which remain with MPT through the pendency of the lawsuit.  Washington Regional receives this windfall without having to make any similar assurances to the Court or MPT of its ability to pay to MPT the disputed $9,400,000 purchase price to MPT.  If the Court's order stands, this Court should order Washington Regional to pay $9,400,000 into the registry of the Court.

The in-practice result of the Court's Order is that it defeats MPT's ability continue as a matter of going concern.  See Ex. A, Hamner Affidavit, ¶ 10.  The inability of MPT to meet its obligations associated with the Property may and will likely require action by MPT which runs contrary to the interest of any of the parties involved in this litigation regardless of who is entitled to collect rent payments.  The Court's Order works as a penalty to MPT whereas no other party to the dispute is placed in similar uncertainty.  By having funds placed in the registry, Washington Regional has secured MPT's assets to satisfy a potential, and unfounded, legal claim without paying any consideration for those benefits.  NARA, as noted by the Court, is merely asked by the Order to continue with its obligations under the Lease.  Equitable compensation is intended to equalize losses between the parties occasioned by the delay in performing the contract.  Here, Washington Regional and NARA are using equitable compensation combined with Rule 67 to irreparably harm MPT.  The doctrine is intended to act as an accounting, not a sword.  If the Court's Order stands, the Order will deprive MPT of its ability to meet its obligations associated with the Property.

### III.  CONCLUSION

For the foregoing reasons, MPT of Fayetteville, LLC respectfully requests that this Court reconsider its January 19, 2012 Order, and deny Washington Regional Outreach Services' Motion to Suspend Collection of Holdover Rent or Direct Payment of Holdover Rent Into the

Registry of the Court (document 15) and Northwest Arkansas Rehabilitation Associates' Motion to Suspend Collection of, Allow, or Order Payment of Hold Over Rent Into the Registry of the Court (document 27).  In the event this Motion for Reconsideration is denied, MPT requests the Court's January 19, 2012 Order be certified for immediate appeal under 28 U.S.C. § 1292(b) and that Washington Regional be ordered to pay $9,400,000 into the registry of the Court.

Respectfully submitted,

**KUTAK ROCK LLP**

By: /s/ *Michael R. Bond*
  Michael R. Bond, AR 2003114
  Russell Atchley, AR 82007
  Dustin R. Darst, AR 2008141
  234 East Millsap Road, Suite 400
  Fayetteville, AR 72703-4099
  (479) 973-4200 Telephone
  (479) 973-0007 Facsimile
  Michael.Bond@KutakRock.com
  Russell.Atchley@KutakRock.com
  Dustin.Darst@KutakRock.com

**ATTORNEYS FOR MPT OF FAYETTEVILLE, LLC**

**CERTIFICATE OF SERVICE**

      I certify that on the 27th day of January, 2012, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| G. Alan Wooten<br>Conner & Winters<br>4375 N. Vantage Drive<br>Fayetteville, AR 72703 | awooten@cwlaw.com |
| Robert A. Frazier<br>Frazier & Frazier, Lawyers, PLC<br>114 South 1st Street, Suite 202<br>Rogers, AR 72756 | robert@frazierlawyers.com |
| Mr. Thomas J. Olmstead<br>3215 North North Hills Boulevard<br>Fayetteville, AR 72703 | tolmstead@wregional.com |
| Alfred F. Angulo, Jr.<br>Barrett & Deacon, P.A.<br>P.O. Box 1506<br>Fayetteville, AR 72702 | dangulo@barrettdeacon.com |

    /s/ *Michael R. Bond*
    Michael R. Bond