IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| WASHINGTON REGIONAL OUTREACH SERVICES | PLAINTIFF |
| VS. | CASE NO. 2011-5030 |
| MPT OF FAYETTEVILLE, LLC,<br>a Delaware Limited Liability Company | DEFENDANT |
| MPT OF FAYETTEVILLE, LLC,<br>a Delaware Limited Liability Company | COUNTER-PLAINTIFF/<br>THIRD-PARTY PLAINTIFF |
| VS. | |
| WASHINGTON REGIONAL OUTREACH SERVICES | COUNTER-DEFENDANT |
| AND | |
| NORTHWEST ARKANSAS REHABILITATION ASSOCIATES, a general partnership; AND<br>CMS FAYETTEVILLE REHABILITATION, INC. | DEFENDANTS |

**DEFENDANT/COUNTER-PLAINTIFF MPT OF FAYETTVILLE, LLC'S RESPONSE TO NORTHWEST ARKANSAS REHABILITATION ASSOCIATES AND CMS FAYETTEVILLE REHABILITATION, INC.'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Defendant/Counter-Plaintiff/Third-Party Plaintiff MPT of Fayetteville, LLC ("MPT") files this Response to Northwest Arkansas Rehabilitation Associates and CMS Fayetteville Rehabilitation, Inc.'s (collectively referred to herein as "NARA") Motion for Temporary Restraining Order and Preliminary Injunction ("Motion").

4852-1113-6015.1

I.

## OVERVIEW

MPT owns a hospital facility located at 153 East Monte Painter Dr., Fayetteville, Arkansas (the "Property"), which is leased to NARA pursuant to a Lease and Security Agreement (the "Lease Agreement"). CMS Fayetteville Rehabilitation, LLC ("CMS") and Washington Regional Outreach Service ("Washington Regional") are general partners of the tenant, NARA. Birmingham, Alabama based CMS is a wholly-owned subsidiary of HealthSouth Corporation, the world's largest operator of inpatient rehabilitation hospitals. NARA operates the facility as HealthSouth Rehabilitation Hospital – Outpatient Services and as part of the larger HealthSouth network across 27 states. The Lease Agreement expired on June 30, 2011. NARA continues to occupy the Property month-to-month as a holdover tenant pursuant to Article XX of the Lease Agreement. *See* Exhibit A, p. 52. As a holdover tenant, NARA is obligated to perform and preserve all of the terms and covenants of the Lease Agreement; however, NARA maintains no other right to possess or remain a tenant on the Property other than those rights afforded to month-to-month tenancies under Arkansas law. *Id.*

The Lease Agreement provided a purchase option to Washington Regional which has led to the above styled litigation, though MPT remains the current owner and landlord of the Property. As is MPT's business, it typically enters into long-term leases with its tenants, similar to the Lease Agreement in this case. This allows MPT to plan and rely on steady rental income and to satisfy its obligations and duties to its shareholders. *See* Ex. B, 4/20/2012 Letter to Mr. Wooten and Mr. Angulo. It is not in MPT's interests to continue in a month-to-month tenancy in which NARA can vacate with 30 days notice. *Id.* Pursuant to MPT's rights under the Lease Agreement and Arkansas law, MPT provided notice to NARA that it will be terminating the

month-to-month tenancy and gave NARA until May 31, 2012 to vacate the property, which represents more time than legally required ("Notice"). See Ex. C. This is the first necessary step in locating a long-term tenant for the facility. In its Notice, MPT informed NARA that in the event more time is needed to vacate in order to assure proper care for patients, to please contact MPT to discuss an accommodation. *Id*.

## II.

## SUMMARY OF ARGUMENT

NARA'S Motion should be denied for a number of reasons.

1. This Court does not have jurisdiction to determine rights of possession. Jurisdiction to determine rights of possession are vested in the circuit courts for the state of Arkansas.

2. NARA cannot show the probability of success on any claim at trial – in fact, NARA has not asserted any claims whatsoever against MPT in this action.

3. NARA has no contractual right to remain in the Property, and the Court may not rewrite the Lease Agreement between the parties.

4. NARA will not suffer any irreparable harm from any alleged wrongful act, and to the extent there is any harm incurred by NARA, it would be the result of agreed upon lease terms.

5. MPT is entitled to protect the investments of its shareholders against the possibility of the decrease in value of its asset in the event it prevails at trial.

6. There will be no public interest harmed. If NARA complies with its contractual obligation to assign all licenses, operating permits, provider agreements, and governmental authorizations and contracts that are necessary to operate the hospital, a

new operator will be able to treat any remaining patients in the same facility when NARA leaves.

### III.

### THE RIGHT TO TERMINATE UNDER THE LEASE

The Notice to Vacate represents a valid exercise of MPT's rights pursuant to the Lease Agreement. *See* Ex. A, Article XX. As a preliminary matter, if NARA refuses to vacate the Property, MPT's remedy as owner and landlord would be to initiate unlawful detainer proceedings. Jurisdiction in such proceedings are vested in the circuit courts for the state of Arkansas. See Ark. Code Ann. §18-60-306. The provisions of that statute provide an avenue for a tenant to object to eviction. *See* Ark. Code Ann. §18-60-301 et seq. By initiating this motion in these proceedings, NARA has side-stepped Arkansas law governing such disputes between a landlord and tenant. NARA argues that, "It is caught in the middle of this dispute and may be permitted to remain as tenant of the Property regardless of the outcome." Dkt. 58, 3. It claims that if Washington Regional is successful, it would have a right to remain on the Property, and that if MPT is successful, the Lease Agreement between NARA and MPT could be renegotiated. *Id*. These claims have no bearing on the determination of whether MPT has the right to terminate the month-to-month tenancy.

Upon expiration of the Lease Agreement, the holdover period is governed by Article XX which states in full:

> If Tenant **for any reason remains in possession of the Property after the expiration of the Term or earlier termination of the Term, such possession shall be a month-to-month tenancy** during which time Tenant shall pay to Landlord as rental each month one and a half (1-1/2) time the aggregate of (1) one-twelfth of the aggregate Base Rent and Percentage Rent and Additional Rent payable with respect to the last Lease year of the term just expired, (ii) all Additional Charges accruing during the month with respect to which such payment relates, and (iii) all other sums, if any, payable to Tenant pursuant to the

>provisions of this Lease with respect to the Property.  **During such period of month-to-month tenancy, Tenant shall be obligated to perform and observe all of the terms, covenants and conditions of this Lease, but shall have no rights hereunder other than the right, to the extent given by law to month-to-month tenancies, to continue its occupancy and use of the Property.**  Nothing contained herein shall constitute the consent, express or implied, of Landlord to the holding over of Tenant after the expiration or earlier termination of this Lease.

Ex. A, 52 (emphasis added).

The Lease Agreement is clear, if NARA remains in possession of the Property upon expiration of the lease, such possession becomes a month-to-month tenancy.  Ex. A, 52.  This right to possess the Property exists only to the extent provided for under the governing month-to-month tenancies under Arkansas law.  In Arkansas, as true under the common law, a month-to-month tenancy is terminable by either party with one month's notice.  *See Robinette v. French*, 20 Ark. App. 102 (1987).  NARA has no rights under the Lease Agreement to remain a tenant beyond this legal notice requirement.  That it may become a tenant for Washington Regional in the future, if Washington Regional ever serves as owner and landlord of the Property, has no bearing on whether MPT may exercise its rights under the Lease Agreement and Arkansas law at this time.  As such, there is little likelihood that NARA would succeed on the merits of this legal issue.

## IV.

## ARGUMENT

This Court should not enjoin MPT from exercising its rights under the Lease Agreement and Arkansas law by preventing it from terminating its month-to-month tenancy with NARA.  As noted in NARA's Motion, in assessing a request for preliminary injunction, the Court must consider (1) the probability that the movant will succeed at trial; (2) the threat of irreparable injury to the movant; (3) the harm to other interested parties if the injunction is granted; and (4)

the public interest. *Dataphase Sys., Inc. v, CL Sys., Inc.*, 640 F.2d 109, 112-13 (8th Cir. 1981). NARA must establish that irreparable harm will result if injunctive relief is not granted and that such harm will not be compensable by money damages. *See Packard Elevator v. I.C.C.,* 782 F.2d 112, 115 (8th Cir. 1986). A showing of speculative harm is insufficient to meet this burden. *Id.* Failure to show irreparable harm alone is a sufficient basis for a court to deny injunctive relief. *Gelco Corp. v. Coniston Partners, 811 F.2d 414*, 420 (8th Cir. 1987). Consideration of these factors weigh against granting NARA's Motion.

### A.    The Probability of Success at Trial

Despite the allegation by NARA the probability of success at trial "is not of paramount importance to the Court's present determination," it remains a consideration relevant to NARA's Motion. First, it bears stating that NARA has no claim against MPT in this matter. NARA was joined as a third-party defendant due to its attempt to exercise an option to purchase the Subject Property already made null by Washington Regional's attempt to exercise its superior option to purchase. It has not moved for declaratory judgment or alleged any other claim or defense that would preclude MPT from terminating the month-to-month tenancy while it still owns the Property. MPT has moved for summary judgment to remove NARA from this action. Dkt. 53-56. Second, as discussed further below, the injuries alleged by NARA in its Motion resulted from its own action or inaction, which in itself will preclude success at trial.

### B.    Irreparable Injury

As noted in Article XX of the Lease Agreement, during a period of holdover, NARA has no interest in the Property beyond that given to a month-to-month tenant under Arkansas law. Ex. A, 52. NARA has not provided any evidence that MPT's notice to vacate causes irreparable harm beyond the normal consequences of remaining on the Property subsequent to expiration of the Lease Agreement. This potential for harm, or what is more accurately described as

inconvenience, was contemplated by NARA when it first entered the Lease Agreement and agreed to become a month-to-month tenant with mutual rights to terminate with 30 days notice if it remained in possession of the Property subsequent to expiration of the Lease Agreement. NARA did not approach MPT to request a re-work or extension of the Lease Agreement or to otherwise avoid becoming a month-to-month tenant on the Property.

NARA claims that if Washington Regional is successful on its claim to purchase the subject property NARA would have the right to remain on the property, and that if forced to vacate it may lose that right. Dkt. 58, 3. This right is merely a potential business opportunity. If Washington Regional ultimately purchases the Property and it is vacant, Washington Regional and NARA are free to negotiate a lease agreement of their own. There is nothing in the Lease Agreement between MPT and NARA which assures NARA of the right to remain the tenant upon its expiration. A speculative business opportunity contingent on an agreement being reached between NARA and Washington Regional cannot serve as the basis for irreparable harm. NARA may claim inconvenience, but that it not the standard set by Rule 65.

NARA also claims, "That this Court should enjoin MPT from pursuing eviction of NARA for the duration of the litigation, else NARA will have paid thousands of dollars in holdover rent in vain" and characterizes MPT's notice to vacate as an "attempt to close down the business operations of NARA and CMS." Dkt. 58, 3-5. NARA argues that it will not have time to relocate, to meet its licensing and Medicare/Medicaid requirements, and that it would lose substantial revenue and incur significant expense if forced to vacate the property. *Id*. Each of these alleged harms are insufficient to show irreparable harm. NARA did not pay rent in vain. It voluntarily paid holdover rent for the right to remain on the property on a monthly basis pursuant to the Lease Agreement. Further, by the terms of the Lease Agreement, NARA knew that if it

held over without renegotiating the Lease Agreement, that it would become a month-to-month tenant. As a month-to-month tenant, both NARA and MPT could terminate with 30 days notice. NARA's arguments regarding irreparable harm are a result of the explicit terms of the Lease Agreement which NARA signed. They do not result from the pending litigation between MPT and Washington Regional or from any alleged wrongful act of MPT. The problems associated with relocation, licensing, and loss of revenue would occur in any scenario where NARA failed to take proper measures prior to expiration of the Lease Agreement. If these factors are sufficient to show irreparable harm, it would defeat the clear and explicit language of Article XX of the Lease Agreement and amount to a re-writing of the contract itself.

       **C.**     **Harm to MPT**

MPT owns the facility as an investment property, and has obligations to its investors which in MPT's experience, requires MPT exercise its right under the Lease Agreement to give NARA notice that MPT is terminating the month-to-month tenancy now in place. *See* Ex. B. NARA claims that harm to MPT will be slight if an injunction is granted as it will continue to receive rent, albeit paid to the registry of the court pending the outcome of this litigation. This oversimplifies MPT's situation. As is MPT's business, it typically enters into long-term leases with its tenants, similar to the Lease Agreement in this case. This allows MPT to plan and rely on steady rental income and to satisfy its obligations and duties to its shareholders. Pursuant to month-to-month tenancy, none of these circumstances exist. NARA, like MPT, has the legal right to terminate the Lease Agreement upon one month's notice. As NARA made no effort to renew or otherwise renegotiate the Lease Agreement, MPT would prefer to exercise its right to terminate the month-to-month tenancy and pursue finding a permanent tenant. The Court should note that MPT stands ready and willing to negotiate a long-term lease with NARA. *See* Ex. B.

Second, a restraining order will force MPT to continue a relationship with NARA that it may not wish to continue and that it has a contractual and legal right to end. MPT has complied with the Lease Agreement at every turn. Rather than complete the appraisal process, Washington Regional initiated this lawsuit. NARA, in which Washington Regional and/or its affiliates maintain a partnership interest, has sided against MPT in this dispute. MPT considers the business relationship strained, and though it stands willing to renegotiate the Lease Agreement with NARA, MPT recognizes that its relationship with NARA may be damaged, and impair the potential of any future agreement. As such, this Court should not remove from MPT its right to terminate this relationship pursuant to Article XX of the Lease Agreement.

Finally, NARA improperly mischaracterizes MPT's efforts to end the month-to-month tenancy as MPT's "third effort to circumvent the Court's prior orders regarding holdover rent and is tantamount to an attempt to close the business operations of NARA." Dkt. 58, 1. As a month-to-month tenancy, both MPT and NARA have the option to terminate the tenancy with one month's notice. NARA remains a tenant on its own volition and the Court's orders regarding holdover rent instruct only that all holdover rent paid by NARA be paid to the registry of the Court. It made no finding regarding either parties' right to terminate the month-to-month tenancy. It is in MPT's business interest to find a long-term tenant for the Property rather than be subject to the uncertainty of a month-to-month tenancy with NARA. MPT also objects to Washington Regional's framing of MPT's exercise of its contractual rights as a "an attempt to close the business operations of NARA." *Id*. It is merely an effort to terminate the tenancy. Under the clear terms of the Lease Agreement, this is foreseeable as the result of NARA's decision to remain on the Property subsequent to its expiration without attempting to renew or renegotiate the Lease Agreement.

D.     **Effect on Public Interest**

NARA argues that "there are significant and complex issues relating to the safety, health, security, and well-being of patients of the rehabilitation hospital, which cannot be planned for [sic] accommodated within the 45-day window contemplated by the Notice of Termination of Month-to-Month Tenancy." Dkt. 58, 6.  As such NARA argues that it is in the public interest to arbitrarily prevent MPT from terminating the month-to-month tenancy for the remainder of this litigation.  *Id*.  MPT, in its notice to vacate, explicitly addressed this issue.  With the 45 day period to vacate, MPT stated that, "Such an extended period for vacating the Premises should provide Tenant with ample time to plan for and to address all patient safety concerns and provide for an orderly vacation of the Premises.  If you believe this time is insufficient and will create patient safety issues, please advise us in writing immediately." *See* Ex. C.  In response, NARA filed its Motion and subsequently sent correspondence to MPT noting that it believed it would take six months to vacate the premises and relocate in suitable accommodation. *See* Ex. D.

NARA confuses the public interest involved in the Court's analysis of whether to grant an injunction.  The interest is not that NARA is able to seamlessly continue its business, but that its patients continue to receive proper care.  In his supporting affidavit, Art Wilson, Chief Real Estate Officer for HealthSouth Corporation, offers several reasons in support of granting NARA's motion for an injunction.  Mr. Wilson's affidavit is qualified with the statement "upon information and belief" and he further testified at his deposition that he had no actual personal knowledge about restrictions regarding the transfer of licenses, and that the statements in his affidavit were based on second-hand information from others.  Dkt. 57-2.  Paragraphs two (moving time and expenses), four (licensing issues), five (facility Medicare/Medicaid issues), and six (lost revenue) of Mr. Wilson's affidavit all deal with NARA's costs and expenses in

relocating to a new facility. Dkt. 57-2. By remaining in possession of the Property upon expiration of the Lease Agreement, NARA, by its own actions, caused its rights in the Property to become a month-to-month tenancy subject to termination upon one month's notice. Any costs or difficulties in relocating are the direct result of the agreed terms of the Lease Agreement and the actions of NARA.

By agreeing to the clear terms of the Lease Agreement, NARA put itself in this position where it may be unable to operate seamlessly during a transition to a new facility. NARA's ability to operate is not the measure for whether it is in the public's interest to enter a preliminary injunction. The appropriate consideration is whether patients receive adequate care. NARA has provided no evidence that its patients cannot be adequately cared for in the event that it ceases to operate the facility. NARA does not operate a long term care facility and while patients stay at the facility for treatment, it is often for short periods of time. HealthSouth, who advertises and operates the Fayetteville facility as part of the HealthSouth system, admits that in its rehabilitation hospitals, "The average inpatient length of stay is two weeks, depending on the patient's rehabilitation needs and progress." *See* Ex. E. Once NARA received MPT's notice to vacate, the proper response was to refrain from admitting new patients. If done, the number of patients needing care beyond the time in which NARA had to vacate would be minimal. Further, in its notice to vacate, MPT explicitly told NARA to contact MPT if patient needs required further accommodation beyond the 45 days notice given to vacate. *See* Ex. C. NARA made no effort to do so prior to filing this Motion and presumably continues to accept patients thereby creating the very problem NARA argues supports its motion for a temporary restraining order.

In regards to the continuation of patient care, Section 28.11 of the Lease Agreement requires NARA to transfer to MPT or its nominee all licenses, operating permits, provider

agreements, and governmental authorizations and contracts that are necessary for the operation of the hospital.  *See* Ex. A.  The Arkansas Department of Health ("ADH") has been granted authority under Arkansas law to regulate hospitals, such as the facility operated by NARA.  See Ark. Code Ann. §§ 20-9-201 et seq.  The ADH recognizes that changes in facility ownership often occur and has adopted rules and regulations governing the transfer process.  *See* Ex. F.  These rules contemplate that a change in ownership can be processed in the 30 days prior to the effective date of the change in ownership.  *Id*. at 4-1.  Moreover, 42 CFR 489.18 provides for the transfer of Medicare provider agreements and Medicare provider numbers in the event of a hospital's change of ownership and notes that assignment of the provider agreement/number is automatic.  *See* Ex. G.  Similar to Arkansas law, federal Medicare law under 42 CFR 424.550 contemplates that a change in ownership of a Medicare participating hospital can be processed in the 30 days prior to the effective date of the change in ownership.  *See* Ex. H.  If NARA complies with these obligations, MPT will locate a permanent tenant for the Property that can continue to provide necessary care for any patients who require treatment after NARA vacates the Property.  In the event MPT is unable to locate a permanent tenant, it will pay for an interim provider to operate the facility.  Such interim providers are available and are typical to prevent lapses in care in these situations.  Once a suitable operator is identified, it is clear from the Arkansas and federal law cited above, that a new operator can be in place to operate the facility within 30 days or sooner if necessary.  This will provide proper care for patients during the winding down of NARA's relationship with MPT and its month-to-month tenancy on the Property pursuant to the Lease Agreement.

## III.

## CONCLUSION

For the foregoing reasons, MPT of Fayetteville, LLC respectfully requests that this Court grant deny NARA's Motion for Temporary Restraining Order and Preliminary Injunction..

        Respectfully submitted,

        **KUTAK ROCK LLP**

        By: /s/ *Michael R. Bond*
            Michael R. Bond, AR 2003114
            Russell Atchley, AR 82007
            Dustin R. Darst, AR 2008141
            234 East Millsap Road, Suite 400
            Fayetteville, AR 72703-4099
            (479) 973-4200 Telephone
            (479) 973-0007 Facsimile
            Michael.Bond@KutakRock.com
            Russell.Atchley@KutakRock.com
            Dustin.Darst@KutakRock.com

        **LOOPER, REED, & MCGRAW**

        By: /s/ *D. Scott Funk*
            D. Scott Funk, admitted pro hac vice
            1300 Post Oak Blvd.,
            Houston, TX 77056
            (713) 986-7000 Telephone
            (713) 986-7100 Facsimile
            sfunk@lrmlaw.com

        **ATTORNEYS FOR MPT OF FAYETTEVILLE, LLC**

**CERTIFICATE OF SERVICE**

  I certify that on the 20th day of April, 2012, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| G. Alan Wooten<br>Conner & Winters<br>4375 N. Vantage Drive, Suite 405<br>Fayetteville, AR 72703 | awooten@cwlaw.com |
| Robert A. Frazier<br>Frazier & Frazier, Lawyers, PLC<br>114 South 1st Street, Suite 202<br>Rogers, AR 72756 | robert@frazierlawyers.com |
| Alfred F. Angulo, Jr.<br>Barrett & Deacon, P.A.<br>P.O. Box 1506<br>Fayetteville, AR 72702 | dangulo@barrettdeacon.com |
| Mr. Thomas J. Olmstead<br>3215 North North Hills Boulevard<br>Fayetteville, AR 72703 | tolmstead@wregional.com |

                 /s/ *Michael R. Bond*
                 Michael R. Bond